UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ILEF M. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-5240-B |
| | § | |
| MEGAN J. BRENNAN, | § | |
| Postmaster General, United States | § | |
| Postal Service | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Megan J. Brennan's Motion for Summary Judgment (Doc. 30).[1] For the reasons stated below, the Court **GRANTS** Defendant's Motion with respect to Plaintiff's Title VII discrimination and retaliation claims.

## I.

## BACKGROUND[2]

This is an employment discrimination case involving accusations of discrimination and retaliation by Plaintiff, Ilef M. Williams (Williams), against the United States Postal Service—Office of Inspector General (OIG).

Williams was a Senior Auditor/Evaluator for OIG until the agency terminated her in 2005.

---

[1] Williams initially filed this case against then-Postmaster General John Potter, who was succeeded first by Patrick R. Donahoe, then by Megan L. Brennan, the current Postmaster General.

[2]The Court takes its factual account from the uncontested facts contained in the summary judgment record. Any contested fact is identified as the allegation of a particular party.

Doc. 32, Ex. 3, USPS–OIG Removal Letter [hereinafter Removal Letter], App. 12–16. So far as the relevant facts, the parties agree that: (1) Williams's position required travel; (2) OIG policy required all employees to use their government credit card for travel; (3) Williams no longer possessed a government travel card as of 2005, and therefore (4) Williams could no longer meet her job's requirements at the time she was fired. *Id.* at App. 19; *id.,* Ex. 5, Informal Compl. in First Case, App. 22. But the parties disagree about whether this was why OIG dismissed her. OIG insists that Williams's lack of a card, plus her alleged "travel card abuses"—namely taking "cash advances amounting to $24,826 . . . for personal purposes"—accounted for its decision. *Id.*, Ex. 3, Removal Letter, App. 19. Williams asserts that her race, color, and/or gender motivated the agency. *Id.*, Ex. 5, Informal Compl. in First Case, App. 22; *id.*, Ex. 7, Formal Compl. in First Case, App. 28. With this in mind, Williams filed an informal complaint against OIG on October 11, 2005, and a formal complaint on December 30, 2005, alleging race and gender discrimination in both. *Id.* After a hearing, the Equal Employment Opportunity Commission (EEOC) dismissed her case on September 21, 2007 and affirmed on June 29, 2009. *Id.*, Ex. 12, J. and Decision Finding No Discrimination After Hr'g in First Case, App. 39–53; *id.,* Ex. 15, EEOC Decision Affirming J. and Decision in First Case Finding No Discrimination, App. 63.

While Williams was pursuing her first case against OIG, she applied for a job with the Small Business Association (SBA). Doc. 3, Ex. 2, SBA Employment Application Signature Page [hereinafter SBA App.]. In her application, she explained that OIG terminated her due to a "minimum qualification issue (in litigation/legal and unable to discuss until resolved)." *Id.* The SBA then hired her, and, less than six months later, fired her for allegedly misrepresenting the reason(s) for which OIG had dismissed her. Doc 32., Ex. 8., SBA Termination Letter, App. 30. Specifically,

the SBA pointed to the fact that OIG indicated that it fired Williams not only for the minimum qualifications issue, but also for Williams's alleged "travel card abuses," discussed above. *Id.*; *see also id.*, Ex. 3, Removal Letter, App. 14. According to the SBA, Williams had not previously disclosed this fact, and the agency learned of it only when OIG provided the agency with Williams's Official Personnel Folder (OPF). Doc. 32, Ex. 8., SBA Termination Letter, App. 30.

After the SBA dismissed her, Williams filed a second complaint against OIG for race, color, and gender discrimination, plus retaliation, this time basing her allegations upon OIG's decision to: (1) include her removal decision letter in her personnel file and (2) send that file to the SBA. *See id.*, Ex. 9, Informal Compl. in Second Case, App. 31–33; *id.*, Ex. 10, Formal Compl. in Second Case, App. 35. After a number of administrative proceedings, the EEOC's Office of Federal Operations affirmed an Administrative Judge's decision to grant OIG summary judgment, thereby dismissing Williams's second case on September 26, 2012. *Id.*, Ex. 17, EEOC Decision Affirming the Decision to Grant Summ. J., App. 78–86.

On December 26, 2012, Williams filed her Complaint against OIG in this Court. Doc. 3, Compl. She characterizes the legal issue here as: "whether the US Postal service discriminated against complainant based on race, color, gender, or retaliation for prior EEO activity when on April 6, 2006, her employment at the Small Business Administration was terminated based on falsification of federal application." *Id.* Brennan sees it differently, insisting that, "at her deposition[,] Plaintiff stated that the claims she was asserting in her Complaint were her termination from USPS-OIG because of her race and gender, and that the USPS-OIG fired her due to disparate treatment." Doc. 30, Mot. Summ. J. 2 (internal citations omitted). Williams had "confirmed that she did not have any other claims in her federal lawsuit," according to Brennan. *Id.* (internal citations omitted). To

support her contention, Brennan directs the Court to pages 44–48 of her Appendix, which purportedly contain Williams's deposition. The Court finds no such document there.

Out of caution, then, this Court construes Williams's somewhat vague Complaint liberally, and it assumes she now brings Title VII claims against OIG for both: (1) firing her *and* (2) including her removal letter in her OPF, then sending it to the SBA. Thus it will consider both.

On July 21, 2015, current Postmaster General Megan L. Brennan (Brennan) moved for summary judgment on all of Williams's claims. Doc. 30, Mot. for Summ. J. Though Williams's response was due August 11, 2015, she has filed nothing. The Court now considers whether to grant Brennan's Motion.

## II.

## LEGAL STANDARDS

A.    *Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude granting summary judgment. *Id.*

The party who moves for summary judgment bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. *Id.* Rather, the movant may satisfy its burden by pointing

- 4 -

to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075. Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))."This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).To determine whether a genuine issue exists for trial, the Court must view all evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). If that evidence would allow a reasonable jury to return a verdict for the non-movant, a genuine issue of material fact exists, and summary judgment is inappropriate. *Id.; Anderson*, 477 U.S. at 247–48.

      1.    <u>Effect of not responding to a summary judgment motion</u>

      If a party fails to respond to a summary judgment motion, she is relegated to her unsworn pleadings, which are not summary judgment evidence. *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 165 (5th Cir. 1991)). While this does not permit the Court to enter a "default" summary judgment, it does allow it to accept the movant's evidence as undisputed. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (holding a party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim).

      2.    <u>Effect of being a *pro se* litigant</u>

That the non-responding party is a *pro se* litigant does not change this presumption. A *pro se* litigant "is not, as the party with the burden of proof, excused from the requirement that [she] set forth specific facts supporting [her] claim." *Bookman*, 945 F. Supp. at 1005 (citations omitted). Judge Sidney A. Fitzwater has explained:

> There is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.

*Id*. When a *pro se* litigant fails to respond, a court may independently survey the record in search of evidence in favor of the non-responding plaintiff's case, but it is in no way obligated to do so. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 n.3 (5th Cir. 1996); *Marshall v. Valdez*, No. 02-CV-1668-B, at *6 (N.D. Tex. Nov. 30, 2004) (Boyle, J.); *Bookman*, 945 F. Supp. at 1004. Rather, the non-movant must respond and, when she does, "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman*, 945 F. Supp. at 1004 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). A plaintiff's *pro se* status does not absolve her of her obligation to set forth specific facts supporting her claims. *Id.*; *Jones*, 82 F.3d at 1338.

Here, Williams has not responded to Brennan's summary judgment motion. Accordingly, she is relegated to her unsworn pleadings, even though she proceeds *pro se*. The Court has no duty to sift through the record in search of evidence to support her opposition to summary judgment, nor will it independently do so. Thus the Court accepts Brennan's assertions as undisputed and moves on to

address the merits of her Motion. *See Ragas*, 136 F.3d at 458; *Denmark v. Cole*, 2005 WL 3293988, at *3 (N.D. Tex. Nov. 30, 2005) ("Because of plaintiff's failure to respond, defendants' evidence is accepted as undisputed and summary judgment may issue to defendants upon a prima facie showing of entitlement") (citations omitted).

## III.

## ANALYSIS

Brennan moves for summary judgment on both of Williams's claims, which, as far as this Court can tell, include (1) race, color, and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a) *et seq.*; and (2) discriminatory retaliation under that same provision. *See* Doc 3. Compl. As a preliminary matter, Brennan insists each claim is untimely and therefore must be dismissed. Doc. 30, Mot. for Summ. J. 4. Before moving on to the merits of Williams's claims, the Court addresses this argument.

A.      *Whether Williams's Complaint Was Timely Filed*

Brennan begins her summary judgment motion with her timeliness argument, but makes clear that she limits it "to the extent that [Williams's] termination is sole basis of her Complaint." *Id.* (citing 42 U.S.C. § 2000e-16(c)). But as this Court has indicated, it will construe Williams's Complaint as challenging *both* (1) OIG's decision to terminate her (termination claim) and (2) OIG's decision to include her removal letter in her OPF folder and send it to the SBA (transmittal claim).

Under 42 U.S.C. § 2000e-16(c), an individual employed by the USPS who alleges discrimination may bring a civil action against the agency "[w]ithin 90 days of receipt of notice of final action taken by a[n] [applicable] department, agency, or unit . . . or by the [EEOC] upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination

based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section . . . ." In the Fifth Circuit, courts presume that an individual receives notice no later than seven days after an agency mails its decision. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379–80 (5th Cir. 2002). Here, because Williams's termination and transmittal claim form the bases of separate EEOC adjudications, whether her claim before *this* Court is timely depends on whether it is based upon her underlying termination claim or her underlying transmittal claim. The Court analyzes the implications of each in turn.

      1.    <u>The termination claim</u>

The EEOC issued its final decision in Williams's termination case on June 26, 2009. Doc. 32, Ex. 15, EEOC Decision Affirming J. and Decision in First Case Finding No Discrimination, App. 63. The law presumes the agency mailed it that same day, and that Williams received it no later than July 3, 2009. Thus she was required to file her civil case no later than October 1, 2009. She did not do that. *See* Doc. 3, Compl. (showing case was filed Dec. 26, 2012). Thus, to the extent Williams's Complaint here is based on OIG's decision to terminate her, it is not timely, and the Court will not consider the substance of any discrimination or retaliation claim based upon her termination.

      2.    <u>The transmittal case</u>

The EEOC mailed its final decision in Williams's transmittal case on September 26, 2012. Doc. 32, Ex. 17, EEOC Final Decision in Second Case, App. 86. The law presumes Williams received it no later than October 3, 2012. Thus she was required to file her civil case no later than January 2, 2013, given the holiday. She did that. *See* Doc. 3, Compl. (showing case was filed Dec. 26, 2012). Accordingly, the Court will consider Williams's discrimination and retaliation claims based upon OIG's decision to include her removal letter in her OPF, then sending it to the SBA.

B.      *USPS-OIG had Legitimate, Non-Discriminatory Reasons for Including Williams's Removal Letter in Her OPF and Providing that File to the SBA*

Moving on to the substance of Williams's allegations, the Court considers Brennan's argument that Williams cannot establish her Title VII discrimination claim because OIG can provide a legitimate, non-discriminatory reason for including Williams's removal letter in her OPF, then sending it to the SBA.

To begin, the Court notes that, because Williams submits no direct evidence of discrimination, her discrimination claims proceed under *McDonnell Douglas'* burden-shifting framework. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Under this framework, a plaintiff must first make out a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she does, the burden shifts to her employer, who must "articulate some legitimate, nondiscriminatory reason for the [adverse decision concerning the] employee." *Id.* If the employer can do so, the burden shifts back to the employee, who must then show that her employer's stated reason was pretextual. *Id.* at 804.

Here, Brennan concedes—for purposes of her Motion, at least—that Williams has established a *prima facie* discrimination case. Doc. 30, Mot. for Summary J. 5. But Brennan articulates a legitimate, nondiscriminatory reason for both of OIG's actions—they are part of the agency's ordinary protocol. To show that including a removal letter in an employee's OPF is standard practice, Brennan presents the Declaration of Leonard Napper (Napper), OIG's Director of Human Resources. Napper writes, "Throughout my tenure the OIG has always included letters of removal in an employee's OPF to support and explain the reasons for a termination or other adverse action." Doc. 32, Ex. B, Decl. of Leonard Napper, App. 96. To prove that OIG always forwards an OPF when

an employee leaves the agency, Brennan presents the Equal Employment Opportunity Investigative Affidavit of OIG's Director of Performance Management, Bryan D. Jones (Jones). Referring to OIG's decision to include Williams's removal letter in her OPF and then send that folder to the SBA, that affidavit asks: (1) "Was Complainant's race a factor? If so, please explain"; (2) "Was the Complainant's color a factor? If so, please explain"; and (3) "Was the Complainant's sex a factor? If so, please explain." *Id.*, Ex. 18, Aff. of Bryan Jones, App. 89 –90. To each, Jones responds, "No, we [OIG] are required to forward OPFs for all employees who leave the agency [OIG]." *Id.*

Under Federal Rule of Civil Procedure 56(c)(4), affidavits and declarations can support a motion for summary judgment if they are "[1] made on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated." Here, both Napper's declaration and Jones's affidavit meet all three requirements, and Williams presents no evidence to refute their statements. Accordingly, based on the evidence before it, this Court **GRANTS** Brennan's Motion for Summary Judgment as to Williams's discrimination claims.

C.      *USPS-OIG had Legitimate, Non-Retaliatory Reasons for Including Williams's Removal Letter in Her OPF and Providing that File to the SBA*

The *McDonnell Douglas* framework also applies to Williams's retaliation claim. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Here, Brennan again concedes Williams has established a *prima facie* retaliation case—at least for purposes of her Motion. Doc. 30, Mot. for Summary J. 5. Thus the Court moves to step two: determining whether Brennan has offered a legitimate, nonretaliatory reason for OIG's decision to include Williams's removal letter in her OPF and then send it to the SBA. For the reasons stated above, the Court finds that Brennan has. *See*

*supra* Sec. III(B). Accordingly, the Court **GRANTS** Brennan's Motion for Summary Judgment as to Williams's retaliation claim.

D.       *Williams's Procedural Claims*

Though Brennan does not raise the issue in her Motion for Summary Judgment, the Court nevertheless notes that Williams seeks: (1) "a reversal . . . [of] the AJ's decision dispensing with the hearing [in her second case]"; (2) "an Order directing the agency (USPS) to respond to [her] written discovery [request in her second case]"; and (3) the agency's "appear[ance] at a disposition [sic] and process the within action [sic] [in her second case]." Doc. 3, Compl. Williams points to no applicable law in her Complaint to justify this relief. The Court construes her assertions as due process claims. To that end, they are inappropriate here. "Courts have held that EEOC investigative actions do not implicate due process, because the EEOC's investigation and resultant findings have no affect upon a discrimination victim's lawsuit and because it lacks final adjudicative power." *Cortez v. Wright*, No. CIV06-1198JB/ACT, 2008 WL 4104133, at *12 (D.N.M. Apr. 29, 2008); *see also Ward v. E.E.O.C.*, 719 F.2d 311, 313–14 (9th Cir.1983) ("The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit by either the EEOC or the charging party in federal district court; only the district court may fix liability."). Accordingly, the Court concludes that Williams's procedural claims are not properly brought here, and so it does not address them.

## IV.

## CONCLUSION

Williams has not put forth any evidence to demonstrate any genuine issue of material fact exists to warrant a trial. *See Matsushita*, 475 U.S. at 587. Therefore, Brennan's Motion for Summary

Judgment as to all of Williams's claims is **GRANTED**. Brennan prevails on all of Williams's asserted claims as a matter of law.

SO ORDERED.

SIGNED: October 21, 2015

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE